**266 P.2d 500**

**JACKSON et ux. v. COPE et al.**

**No. 8012.**

Supreme Court of Utah.

Feb. 4, 1954.

F. Robert Bayle, Salt Lake City, for appellants.

Young & Young, Salt Lake City, for respondents.

WADE, Justice.

Appeal from a judgment in favor of the Jacksons in an action commenced by them for damages caused by the Copes, a partnership doing business as The Cope Brothers Lumber Co., negligently signing a blank lien waiver for $700 and delivering it to the contractor building a home for the Jacksons and thereby enabling the contractor to obtain that sum from them. The loss resulted from the bankruptcy of one Holmes who was a building contractor for the Jacksons and others and who was indebted to the Cope Brothers Lumber Co. for materials furnished him.

At the pre-trial it was admitted that appellants delivered to respondents' contractor lien waivers upon their property in the sum of $700 and that there was a custom in the community that banks or trust companies holding money for the builders of homes would pay the subcontractors upon receipt of a lien waiver from the various materialmen and subcontractors working on the building.

After trial the court sitting without a jury as finder of the facts, found that the Jacksons had entered into a contract with Holmes to build them a home and had made arrangements with the Union Trust Co. of Salt Lake City, Utah, to have it pay Holmes at different stages of construction of their home upon his presentation of lien waivers. That appellants executed a lien waiver upon respondents' premises in the amount of $700 which was presented to the Union Trust Co. and that amount was thereupon paid to Holmes from their account. That appellants knew at the time

the lien waiver was executed of the custom of banks and trust companies to pay contractors sums of money on building accounts when lien waivers were presented. The court further found that appellants did not furnish any materials or render any services for the construction of respondents' home and had received $700 from the funds belonging to them without furnishing them materials or services or for any other consideration, thereby damaging respondents in that sum.

Appellants contend that these findings are unsupported by the evidence and the court therefore erred in making them and that it also erred when at the conclusion of respondents' case it allowed them to amend the pre-trial order by inserting the issue of money had and received for no consideration.

The evidence disclosed that on October 27, 1950, Cope Brothers Lumber Co. received in the mail from Holmes a check in the sum of $700 and a blank lien waiver addressed to the Union Trust Co. Appellants knew of the custom of banks or trust companies to pay a contractor upon presentment of lien waivers. At the time this check was received Holmes owed the appellants about $3,900 for materials furnished to him to be used on various buildings he was constructing at that time and which were delivered to him by appellants and taken by him or his agents to a warehouse Holmes maintained and from there to wherever he wanted to use them. Upon receipt of the check and blank lien waiver one of the appellants inserted the sum received, signed the waiver and returned it to Holmes who then filled in the blanks with respondents' names and address and presented it to the Union Trust Co., where he received $700 from respondents' fund. There was no evidence that any of the materials supplied by appellants were used in respondents' home whereas one of the respondents testified he went to his home every day it was being built and he saw that the materials were delivered by another lumber company. There was also evidence that the amount of materials ordinarily used in a home the size of respondents' was delivered by this other lumber company. This evidence was sufficient to sustain that part of the court's findings that appellants did not furnish any materials for respondents' home or give any other consideration to them for the $700 they received and for which the lien waiver was given which was later presented for payment by Holmes from respondents' fund with the Union Trust Co., knowing that there was a custom that upon presentation of a lien waiver a bank or trust company would pay the contractor the amount shown therein. However, there was no evidence appellants received $700 from respondents' fund. What appellants did was to make it possible for respondents' contractor to get that sum from them.

The court failed to make a finding that appellants were negligent in issuing the lien

waiver in blank upon receipt of the check for $700, therefore its judgment was not based on that issue as originally pleaded by respondents but must necessarily have been based on a cause of action for money had and received or "unjust enrichment." It is therefore necessary to determine if the court erred in allowing the pre-trial order to be amended to include that issue and if it did not err in that respect, whether it erred in concluding from the evidence that respondents were entitled to a judgment against appellants because they had given no consideration to them for the $700 they received from Holmes.

Appellants argue that the court erred in allowing the amendment after respondents had rested because they had made an election to try their case on a tort and they therefore were precluded from changing their theory to an action in assumpsit, that being an entirely new and different cause of action. This court discusses when and what amendments may be made in pleadings in Hartford Accident & Indemnity Co. v. Clegg, 103 Utah 414, 135 P.2d 919. As my concurring opinion on pages 427, 428 and 429 of 103 Utah, on page 925 of 135 P.2d reports points out:

"* * * amendments should be liberally allowed in the interest of justice whenever it will aid in settling an entire controversy. The limitations thereon should be whether the matters involved are such as can be conveniently and effectively handled in one trial without injury to substantive rights.

* * * * * *

"The term 'cause of action' is used with many different meanings. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 280, 77 L.Ed. 619. Such a term leads to confusion rather than clearness of thought. Inherently, in order to efficiently handle the business of the courts and in the furtherance of justice there should be a liberal allowance of amendments. * * * The only limitation which our statute places on the power of the court to allow amendments is that they must be allowed on 'such terms as may be just', or 'in furtherance of justice'. Sections 104–14–1, 2, 3 and 4, Utah Code Annotated 1943. The rule would be much more definite and understandable if we omitted from consideration entirely the question of whether a new cause of action had been imported, rather than to enlarge the meaning of the term 'cause of action'."

In the instant case the amendment was made to conform to the evidence and the new issue was such as could be conveniently and effectively handled in that trial without injury to substantive rights, and appellants do not claim that they were surprised by the evidence or were not given an opportunity to meet it. Under such circumstances it was clearly in "the furtherance of justice" to allow the amendment of

334

the pre-trial order. Reich v. Christopulos, Utah, 256 P.2d 238.

 The question of whether the court's findings supported its conclusion that respondents were entitled to a judgment in their favor is more difficult of solution. At the time appellants received the check for $700 from the contractor he owed them about $3,900 for materials furnished him to be used on a number of buildings he was constructing. Because he took his own deliveries they did not know on which particular building the materials were actually used. The check was on the contractor's account. The evidence disclosed the contractor did not receive the money from respondents' fund until five days after appellants had received the check from him. There was no evidence of collusion between appellants and the contractor. When they received the check from him they had a right to apply it to any debt due from him. See Georgia State Savings Ass'n v. Sun Lumber Co., 138 Okl. 11, 280 P. 281, and Bounds v. Nuttle, 181 Md. 400, 30 A.2d 263. Under such circumstances it cannot be said the appellants were unjustly enriched at the expense of respondents, which is a necessary element in an action based on an implied promise. 7 C.J.S., Assumpsit, Action of, § 9(C) (1), page 114. They did not receive the money from respondents and there was no evidence that they had any knowledge that the money came from respondents. As a matter of fact it could not have come from respondents' fund because at the time appellants received the check, Holmes had not received any money from respondents on account of this lien waiver. It was five days later that the lien was presented by the contractor to the bank and the money obtained.

Although we have concluded that the evidence cannot sustain a judgment on the theory of "unjust enrichment" or "for money had and received" it does not follow that respondents have no remedy. Appellants signed a lien waiver leaving blanks to be filled in by the contractor which they knew could and probably would be used to obtain payment from some owner for whom the contractor was building. In doing so they made it possible for the contractor to obtain money from an owner upon whose property they might not have a right to a lien, as was the case here. This evidence is sufficient to sustain a finding that appellants were negligent because as reasonable men they should have been able to foresee that as a result of their act in filling out blank lien waivers they made it possible for some innocent third person to be defrauded. See Restatement of the Law, Torts, § 302, (b) and comments thereon, which states on page 814:

"A negligent act may be one which:

"(b) creates a situation which involves an unreasonable risk to another because of the expectable action of the other, a third person, an animal or a force of nature."

Since the court as the finder of the facts failed to make any finding on the subject of the negligence of appellants, if any, it will be necessary to remand this case for a new trial.

Reversed and remanded for new trial. Each party to bear his own costs.

McDONOUGH, CROCKETT and HENRIOD, JJ., concur.

WOLFE, C. J., being disqualified, did not participate herein.